**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION**

| | | |
|---|---|---|
| MACROPOINT, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No: 6:16-cv-1133-RWS-KNM |
| | ) | |
| RUIZ FOOD PRODUCTS, INC., | ) | |
| | ) | |
| Defendant. | ) | |

**RUIZ FOOD PRODUCTS INC.'S MOTION TO TRANSFER OR, IN THE
ALTERNATIVE, STAY PENDING RELATED LITIGATION[1]**

---

[1] This motion is filed subject to, and without waiving, Ruiz Food Products, Inc.'s Motion to Dismiss for Insufficient Service of Process. [Dkt. 10].

# TABLE OF CONTENTS

I.  INTRODUCTION ................................................................................................. 1

II.  FACTUAL BACKGROUND ............................................................................... 2

 A. This Case Is In Its Infancy. ..................................................................... 2

 B. The Parties Have Negligible Connections to Texas. .............................. 2

  1. MacroPoint is an Ohio company. ............................................... 2

  2. Ruiz Foods is a California company............................................ 3

  3. FourKites is an Illinois Company. .............................................. 4

 C. MacroPoint First Chose Its Home Forum—Ohio—To Pursue Its Patent Claims Against FourKite's Technology. ................................................. 4

 D. MacroPoint Was Unsuccessful, and Its Patents Were Invalidated by the Ohio Court. ............................................................................................ 5

 E. The FourKites-MacroPoint Dispute Regarding the '659 and '358 Patents is Now Also Pending in Ohio. ................................................................ 5

III.  LEGAL STANDARD......................................................................................... 6

 A. Transfers under Section 1404(a)............................................................. 6

 B. Stays of Litigation and the Customer-Suit Exception............................. 6

IV.  ARGUMENT ...................................................................................................... 7

 A. The Court Should Transfer This Case to the Northern District of Ohio.................. 7

  1. MacroPoint Could Have Sued Ruiz Foods in Ohio......................... 7

  2. The Public & Private Factors Strongly Favor Transfer. .................. 8

   a. Judicial Economy and the Risk of Inconsistent Adjudication Weigh Overwhelmingly in Favor of Transfer........... 8

   b. Access to Sources of Proof Favors Transfer................................. 9

   c. Transfer Would Increase the Availability of Compulsory Process to Secure the Attendance of Witnesses........................... 10

   d. Northern District of Ohio is More Convenient for Most Witnesses. ................................................................................ 11

e.     The Northern District of Ohio Has a Significant Local Interest in the Resolution of this Case. ......................................... 12

f.     The Remaining Factors Are Neutral. ............................................ 13

B.     Alternatively, This Case Should Be Stayed. .......................................................... 13

1.    This Is a Classic Customer-Suit Situation. ..................................................... 14

2.    A Discretionary Stay is Also Appropriate. ..................................................... 14

V.     CONCLUSION ................................................................................................... 15

# TABLE OF AUTHORITIES

**Cases**                                                                           **Page(s)**

*In re Acer Am. Corp.*,
 626 F.3d 1252 (Fed. Cir. 2010).................................................................................10

*ColorQuick, L.L.C. v. Vistaprint Ltd.*,
 No. 6:09-CV-323, 2010 WL 5136050 (E.D. Tex. July 22, 2010) ...........................................8

*ComCam Int'l, Inc. v. Mobotix Corp.*,
 No. 2:13-CV-798, 2014 WL 4229711 (E.D. Tex. Aug. 26, 2014) ...........................................8

*FourKites, Inc. v. MacroPoint, LLC*,
 Case No. 15-cv-2703 (N.D. Ohio) .........................................................................15

*In re Genentech, Inc.*,
 566 F.3d 1338 (Fed. Cir. 2009).....................................................................9, 11, 13

*In re Google Inc.*,
 588 Fed. App'x 988 (Fed. Cir. 2014).......................................................................14

*In re Hoffmann-La Roche Inc.*,
 587 F.3d 1333 (Fed. Cir. 2009)........................................................................10, 13

*Humble Oil & Ref. Co. v. Bell Marine Serv., Inc.*,
 321 F.2d 53 (5th Cir. 1963) ................................................................................6

*Invitrogen Corp. v. Gen. Elec. Co.*,
 No. 6:08-CV-112, 2009 WL 331891 (E.D. Tex. Feb. 9, 2009)...............................................8

*Katz v. Lear Siegler, Inc.*,
 909 F.2d 1459 (Fed. Cir. 1990)............................................................................7

*Kinetic Concepts, Inc. v. Medela AG*,
 No. 2:07-CV-187, 2008 WL 112120 (E.D. Tex. Jan. 9, 2008)...............................................9

*Landis v. N. Am. Co.*,
 299 U.S. 248 (1936).......................................................................................6

*MacroPoint, LLC v. FourKites, Inc.*,
 Case No. 16-1286 (Fed. Cir.)............................................................................15

*Nidec Motor Corp. v. Broad Ocean Motor LLC*,
 No. 2:15-CV-443, 2016 WL 776986 (E.D. Tex. Feb. 29, 2016)............................................11

*In re Nintendo of Am., Inc.*,
 756 F.3d 1363 (Fed. Cir. 2014)......................................................................7, 14

iii

*NovelPoint Learning LLC v. LeapFrog Enterprises, Inc.*,
    6:10-CV-229, 2010 WL 5068146 (E.D. Tex. Dec. 6, 2010) ..................................................11

*Phoenix Licensing, L.L.C. v. Gen. Motors, LLC*,
    No. 2:13-CV-1093, 2015 WL 1431906 (E.D. Tex. Mar. 30, 2015) .......................................10

*Promote Innovation LLC v. Leviton Mfg. Co.*,
    No. 2:10-CV-235, 2011 WL 672663 (E.D. Tex. Feb. 17, 2011)............................................13

*Software Rights Archive, LLC v. Google, Inc.*,
    2:07-CV-511-CE, 2010 WL 2950351 (E.D. Tex. July 22, 2010)...........................................8

*Soverain Software LLC v. Amazon.com, Inc*.,
    356 F. Supp. 2d 660 (E.D. Tex. 2005) ..................................................................................7

*Van Dusen v. Barrack*,
    376 U.S. 612 (1964)...........................................................................................................6, 8

*In re Vicor Corp.*,
    493 Fed. App'x 59 (Fed. Cir. 2012).......................................................................................8

*In re Volkswagen AG*,
    371 F.3d 201 (5th Cir. 2004) ...........................................................................................6, 12

*In re Volkswagen of America, Inc.*,
    545 F.3d 304 (5th Cir. 2004) ................................................................................................6

*Wi-LAN Inc. v. Apple, Inc.*,
    Case No. 6:11-cv-453, Dkt. # 225, slip op. (E.D. Tex. Sept. 14, 2012) ...................................9

**Statutes**

28 U.S.C. § 1404(a) ..................................................................................................................6, 8

## TABLE OF ABBREVIATIONS

| **Abbreviation** | **Meaning** |
|---|---|
| MacroPoint | Plaintiff MacroPoint, LLC |
| FourKites, Inc. | Non-Party FourKites, Inc. (technology supplier) |
| Ruiz Foods | Defendant Ruiz Food Products, Inc. (technology customer) |
| Ohio Court | United States District Court for the Northern District of Ohio |
| the '659 patent | United States Patent No. 9,429,659 |
| the '358 patent | United States Patent No. 8,275,358 |
| the patents-in-suit | Collectively, the '659 and the '358 patent |

## I.      INTRODUCTION

This is a case of forum shopping and gamesmanship. MacroPoint is an Ohio company. Last year, it sued non-party FourKites in the Northern District of Ohio for infringement of five related patents.[2] MacroPoint lost. The Ohio Court found MacroPoint's patents invalid under 35 U.S.C. § 101 and dismissed its complaint against FourKites.[3]

Now, MacroPoint has sued Ruiz Foods—a customer of FourKites—for infringement of two substantially related patents. The first, the '659 patent, belongs to the same patent family and is substantively the same as the patents already invalidated by the Ohio Court. The second, the '358 patent, belongs to a different patent family, but nevertheless relates to the same subject matter and technology as the patents that the Ohio Court already addressed and invalidated. Both of these patents are also at issue in the Ohio Court in a case FourKites recently filed.

This case belongs in the Northern District of Ohio. Ohio is MacroPoint's home—and it first chose that home court to sue FourKites for alleged infringement of patents that were, to its undoubted disappointment, invalidated there. While understandable that it may want to try a new jurisdiction to address its patents a second time, the fact remains that Ohio is the location of all the evidence related to the conception and reduction to practice of the alleged invention of the patents-in-suit. In addition to MacroPoint itself, its primary legal counsel, the inventor of these patents, and the prosecuting attorneys all reside in Ohio. Most importantly, the Ohio Court is already intimately familiar with MacroPoint and the subject matter of the patents-in-suit, and the Ohio Court will be adjudicating the issues of validity and infringement in the suit between FourKites and MacroPoint related to the FourKites technology at issue. Ruiz Foods is

---

[2] United States Patent Nos. 8,604,943; 9,070,295; 9,082,097; 9,082,098; and 9,087,313.

[3] MacroPoint's appeal of that decision is currently pending, with oral argument scheduled for December 6, 2016. *See* Case No. 16-1286 (Fed. Cir.).

headquartered in California; indeed, the only connection to this district is one Ruiz Foods processing facility in Denison. The gravity of this case, however, is squarely in Ohio.

Alternatively, the Court should stay this case pending resolution of the underlying FourKites-MacroPoint litigation. FourKites supplies the technology that MacroPoint alleges infringes the '659 patent and '358 patent. FourKites, not Ruiz Foods, has a paramount interest in adjudicating whether the claims of the '659 patent and '358 patent are valid and infringed by its technology. Under the customer-suit exception, this case—brought against one of FourKites' customers, which has a far lesser interest in the ultimate adjudication of the FourKites-MacroPoint dispute—should wait to proceed while the supplier-suit, which will likely be dispositive of any claims or defenses in this case, moves forward. This case also should wait for resolution of MacroPoint's appeal of the Ohio Court's prior decision because the Federal Circuit's resolution of that appeal will inevitably inform the Court and the parties' positions in this litigation.

## II.    FACTUAL BACKGROUND

### A.    This Case Is In Its Infancy.

This case is in its early stages. MacroPoint filed its complaint on August 30, 2016. Dkt. #1. Ruiz has not answered, having instead filed a motion to dismiss on November 7, 2016, for insufficient service of process. Dkt. # 10. No scheduling conference has been set, no docket control order has been entered, and no *Markman* or trial dates have been assigned.

### B.    The Parties Have Negligible Connections to Texas.

#### 1.    MacroPoint is an Ohio company.

MacroPoint is a limited liability company organized and existing under the laws of the State of Ohio, with a principal place of business at 6050 Oak Tree Boulevard, Suite 150, Cleveland, Ohio. Dkt. # 1 at ¶ 4. MacroPoint's CEO, Bennett H. Adelson, resides in Highland

Heights, Ohio, which is a suburb of Cleveland. Ex. A.

Mr. Adelson is the sole named inventor of the patents-in-suit. Exs. A, B. The '358 patent, entitled "Providing notice and receiving consent to obtain location information of a mobile device," and the '659 patent, entitled "Machine or group of machines for monitoring location of a vehicle or freight carried by a vehicle," are both generally directed to tracking freight. *Id.* The prosecuting attorney, Luis Carrion, works out of the Cleveland, Ohio office of Renner, Otto, Boisselle & Sklar, LLP. Ex. C.

### 2.    Ruiz Foods is a California company.

Ruiz Foods is a California corporation with a place of business in Dinuba, California. Ex. D at ¶ 3. Dinuba is home to Ruiz Foods' headquarters and its 300,000 sq. ft. main manufacturing facility. *Id.* All of Ruiz Foods' executives responsible for handling of transportation and logistics functions work out of the Dinuba, California office. *Id.* at ¶ 4. Ruiz Foods' primary decision-making, such as whether to partner with a particular technology vendor, is conducted at its headquarters in California. *Id.* All of the documents relevant to such decision making with respect to the handling of transportation and logistics functions resides in California. *Id.*

In addition to its main manufacturing facility in Dinuba, California, Ruiz Foods has additional manufacturing facilities in Tulare, California, Denison, Texas, and Florence, South Carolina. *Id.* at ¶ 3. Ruiz Foods' Denison facility is solely a food product manufacturing facility. *Id.* at ¶ 5. Ruiz Foods does not conduct executive-level decision-making relating to transportation and logistics in Denison. *Id.* No employees or documents relevant to such decision making work at the Denison facility. *Id.*

Ruiz Foods does not make freight tracking technology. *Id.* at ¶ 6. In fact, until Ruiz Foods began using FourKites for freight tracking services, Ruiz Foods did not use freight tracking technology. *Id.* FourKites' freight tracking services are not located on any particular

3

computer in Ruiz's possession; rather, Ruiz Foods uses the FourKites freight tracking services from its headquarters in California by way of a cloud-based platform to track freight throughout the United States. *Id.*

### 3.    FourKites is an Illinois Company.

FourKites is a Delaware corporation with a place of business in Chicago, Illinois. Ex. E. FourKites is an innovative provider of real-time supply chain visibility and logistics solutions. Ex. F. On information and belief, FourKites makes strategic business decisions about developing, marketing, selling, and distributing software solutions from its headquarters in Chicago. *Id.* On information and belief, FourKites' executives and documents, including those related to its relationship with Ruiz Foods, are located in Chicago. *Id.*

### C.    MacroPoint First Chose Its Home Forum—Ohio—To Pursue Its Patent Claims Against FourKite's Technology.

This case is a proxy-fight in a broader dispute between MacroPoint and FourKites, which supplies the technology that forms the basis for MacroPoint's allegations in this case.

FourKites makes and sells freight tracking products and services. Ex. F. In 2015, MacroPoint sued FourKites, in its home forum of the Northern District of Ohio, for infringing five of its other patents.[4] *See* dkt. # 16, Case No. 15-cv-1002 (N.D. Ohio). FourKites moved to dismiss those claims on the grounds that those patents were invalid under 35 U.S.C. § 101. Dkt. # 16, Case No. 15-cv-1002 (N.D. Ohio). While that motion was pending, MacroPoint and FourKites engaged in significant discovery based on the schedule entered in that case. *See* Dkt. # 15, Case No. 15-cv-1002 (N.D. Ohio). The schedule required service and response to written discovery, document production, service of infringement, non-infringement, and invalidity

---

[4] In 2014, MacroPoint also used the Ohio Court to assert one of those patents against SaleBug.com, LLC et al. *See* Case No. 14-cv-312 (N.D. Ohio). That suit, which is now dismissed, did not concern FourKites' freight tracking products and services.

contentions, and the exchange of *Markman* disclosures. *Id.*

The parties also educated the Ohio Court about the technology underlying the asserted patents. All told, MacroPoint and FourKites filed more than seven hundred pages worth of briefs and exhibits. Dkt. ## 6, 18, 21, 22, 23, 24, Case No. 15-cv-1002 (N.D. Ohio). MacroPoint's filings included two expert reports, totaling more than one hundred pages, that allegedly explained the technology underlying the asserted patents. Dkt. ## 21-3, 24-1, Case No. 15-cv-1002 (N.D. Ohio).

### D. MacroPoint Was Unsuccessful, and Its Patents Were Invalidated by the Ohio Court.

On November 6, 2015, the Ohio Court granted FourKites' motion to dismiss and entered an order finding all of the claims of the asserted patents invalid. Dkt. # 26, Case No. 15-cv-1002 (N.D. Ohio). In a detailed, fourteen page memorandum opinion and order, the Ohio Court analyzed the asserted patents under both the two-step *Alice* standard, as well as the earlier machine-or-transformation test, and determined that the asserted patents were limited to unpatentable subject matter. Dkt. # 25, Case No. 15-cv-1002 (N.D. Ohio). MacroPoint's appeal of that decision is currently pending. *See* Case No. 16-1286 (Fed. Cir.).

### E. The FourKites-MacroPoint Dispute Regarding the '659 and '358 Patents is Now Also Pending in Ohio.

On November 4, 2016, FourKites sued MacroPoint in the Ohio Court. FourKites' claims include requests for declaratory judgments that the '659 patent and '358 patent are invalid and not infringed. *See* Ex. G. Additionally, however, FourKites' claims also include several business torts, including for violations of the Lanham Act, deceptive trade practices and unfair competition and tortious interference. *Id.*

### III.    LEGAL STANDARD

#### A.    Transfers under Section 1404(a).

Section 1404(a) provides that "[f]or the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). The goals of § 1404(a) are to prevent waste of time, energy, and money, and also to protect litigants, witnesses, and the public against unnecessary inconvenience and expense. *Van Dusen v. Barrack*, 376 U.S. 612, 616 (1964). The party seeking transfer of venue must show good cause for the transfer. *In re Volkswagen of America, Inc.*, 545 F.3d 304, 315 (5th Cir. 2004).

A threshold question is "whether the judicial district to which transfer is sought would have been a district in which the claim could have been filed." *In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004). Once met, the question turns in balancing public and private factors relating to the convenience of parties and witnesses as well as the interest of particular venues in hearing the case. *Humble Oil & Ref. Co. v. Bell Marine Serv., Inc.*, 321 F.2d 53, 56 (5th Cir. 1963). The private factors include: (1) access to sources of proof; (2) the availability of compulsory process; (3) the cost of attendance for willing witnesses; and (4) all other practical problems. *Id.* The public factors include: (1) court congestion; (2) the local interest; (3) the familiarity with the governing law; and (4) the avoidance of unnecessary problems of conflicts of laws or in the application of foreign law. *Id.*

#### B.    Stays of Litigation and the Customer-Suit Exception.

A district court has the inherent authority to stay proceedings. "[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936). In deciding whether to stay litigation pending

other proceedings, courts typically consider: (1) whether a stay will unduly prejudice or present a clear tactical disadvantage to the nonmoving party, (2) whether a stay will simplify the issues in question and trial of the case, and (3) whether discovery is complete and whether a trial date has been set. *Soverain Software LLC v. Amazon.com, Inc*., 356 F. Supp. 2d 660, 662 (E.D. Tex. 2005).

"When a patent owner files an infringement suit against a manufacturer's customer and the manufacturer then files an action of noninfringement or patent invalidity, the suit by the manufacturer generally take[s] precedence." *In re Nintendo of Am., Inc.*, 756 F.3d 1363, 1365 (Fed. Cir. 2014). "This 'customer-suit' exception to the 'first-to-file' rule exists to avoid, if possible, imposing the burdens of trial on the customer, for it is the manufacturer who is generally the 'true defendant' in the dispute." *Id.* "[A] primary question is whether the issues and parties are such that the disposition of one case would be dispositive of the other." *Katz v. Lear Siegler, Inc*., 909 F.2d 1459, 1463 (Fed. Cir. 1990).

## IV.    ARGUMENT

### A.    The Court Should Transfer This Case to the Northern District of Ohio.

#### 1.    MacroPoint Could Have Sued Ruiz Foods in Ohio.

There can be no genuine dispute that suit could have been brought in the Northern District of Ohio. MacroPoint alleges that Ruiz Foods infringes the patents-in-suit by "us[ing] machines or groups of machines to monitor location of vehicles carrying freight of Ruiz or location of freight or location of both vehicles and freight as part of its day-to-day business operations." *See*, *e.g.*, dkt. # 1 at ¶ 5. As MacroPoint alleges, Ruiz Foods "operate[s] trucks or other vehicles to deliver freight . . . to various distributors or retailers." *Id.* Ruiz Foods' distributors include sixteen locations in the State of Ohio. Ex. H. Therefore, as Ruiz Foods would have been subject to personal jurisdiction in Ohio at least under a specific jurisdiction theory,

this case could have been brought in the Northern District of Ohio. *See*, *e.g.*, *Software Rights Archive, LLC v. Google, Inc.*, 2:07-CV-511-CE, 2010 WL 2950351, at *2 (E.D. Tex. July 22, 2010).

  **2.**  <u>The Public & Private Factors Strongly Favor Transfer.</u>

   **a.**  **Judicial Economy and the Risk of Inconsistent Adjudication Weigh Overwhelmingly in Favor of Transfer.**

  This case should be transferred to the Northern District of Ohio so that a single court, which is already familiar with the subject matter of the patents-in-suit, can preside over the parties' related claims and defenses. The purpose of § 1404(a) "is to prevent the waste of time, energy and money and to protect litigants, witnesses and the public against unnecessary inconvenience and expense." *Van Dusen*, 376 U.S. at 616. "Such concerns can be alleviated by transferring a case to . . . a district familiar with the patent-in-suit." *ColorQuick, L.L.C. v. Vistaprint Ltd.*, No. 6:09-CV-323, 2010 WL 5136050, at *7 (E.D. Tex. July 22, 2010); *see also In re Vicor Corp.*, 493 Fed. App'x 59, 61 (Fed. Cir. 2012) ("[T]he existence of multiple lawsuits involving the same issues is paramount consideration when determining whether a transfer is in the interest of justice."); *ComCam Int'l, Inc. v. Mobotix Corp.*, No. 2:13-CV-798, 2014 WL 4229711 (E.D. Tex. Aug. 26, 2014) ("Where multiple and parallel lawsuits in two different jurisdictions are contemplated, judicial economy weighs heavily in the Court's transfer analysis.").

  The significant overlap between this case and the FourKites-MacroPoint dispute in Ohio strongly favors transfer. *See Invitrogen Corp. v. Gen. Elec. Co.*, No. 6:08-CV-112, 2009 WL 331891, at *5 (E.D. Tex. Feb. 9, 2009). The patents-in-suit concern the same subject matter and technology that was previously litigated in the Ohio Court. *Compare*, *e.g.,* Exs. A, B *with* Ex. I. Indeed, one of the two patents is from the same family as those invalidated patents. Ex. A.

Where there has been "a prior suit based on closely related patents" and the transferee Court has experience with the subject matters of the parties' dispute, judicial economy weighs in favor of transfer. *See Kinetic Concepts, Inc. v. Medela AG*, No. 2:07-CV-187, 2008 WL 112120, at *2 (E.D. Tex. Jan. 9, 2008).

The case for transfer is even stronger in the present circumstances. Not only are the patents-in-suit closely related to the invalidated patents, but the pending FourKites-MacroPoint dispute also concerns the patents-in-suit. Ex. G. That is, the Ohio Court will be presiding over the exact same questions of infringement and validity as would be considered in this case. Thus, not only would transfer promote judicial economy, but it would also eliminate the risk of inconsistent adjudication that arises when overlapping cases proceed in parallel. *See*, *e.g.*, *Wi-LAN Inc. v. Apple, Inc.*, Case No. 6:11-cv-453, Dkt. # 225, slip op. at 4 (E.D. Tex. Sept. 14, 2012) (granting motion to transfer because it would "allow one judge to more efficiently resolve the common issues, reduce duplicative work on the part of the Court and the parties, and reduce the risk of inconsistent adjudications").

These factors weigh strongly in favor of transfer.

### b.  Access to Sources of Proof Favors Transfer.

The evidence and witnesses relevant to the claims and defenses in this case are more easily accessible in the Northern District of Ohio than in the Eastern District of Texas.

While "the bulk of the relevant evidence usually comes from the accused infringer," *In re Genentech, Inc.*, 566 F.3d 1338, 1345 (Fed. Cir. 2009), this case is not the usual case. MacroPoint's allegations are not based on anything that Ruiz Foods made, sold, or offered for sale. Dkt. # 1 at ¶ 22. Rather, MacroPoint claims that Ruiz Foods infringes the patents-in-suit by using freight tracking products and services developed by FourKites. *Id.* Thus, "the bulk of the relevant evidence" will be coming from FourKites, which is located in Chicago, and not from

Ruiz Foods. Likewise, the witnesses who will testify as to the design and operation of the underlying accused technology will be FourKites witnesses, not Ruiz Foods witnesses. Ex. F.

The remaining party witnesses—MacroPoint's employees and the named inventor—all reside in Ohio, far closer to the Northern District of Ohio than to this Court. Ex. J. Third-party witnesses, such as the prosecuting attorney Luis Carrion, are also located in Ohio. Ex. C.

In contrast, Ruiz Foods is aware of no relevant evidence or witnesses located in this district. Ex. D at ¶ 5. Although Ruiz Foods has a food manufacturing facility in Denison, its headquarters, including the personnel who would have been responsible for any decisions relevant to this case and all their related documents, are located in California. *Id.* at ¶ 4. Any difference in the relative ease of accessing these sources from the Northern District of Ohio or this district will be negligible and far outweighed by the far improved access to the evidence in FourKites' and MacroPoint's possession. *Id.*

### c. Transfer Would Increase the Availability of Compulsory Process to Secure the Attendance of Witnesses.

This factor favors transfer because the Northern District of Ohio has absolute subpoena power over at least some third-party witnesses, whereas this Court has absolute subpoena power over none. The availability of compulsory process weighs in favor of transfer when the transferee district would have "absolute subpoena power," *i.e.*, subpoena power for both depositions and trial, over more third-party witnesses than the transferor district. *In re Hoffmann-La Roche Inc.*, 587 F.3d 1333, 1337 (Fed. Cir. 2009). The focus of this factor is on witnesses for whom compulsory process to attend trial might be necessary. *See Phoenix Licensing, L.L.C. v. Gen. Motors, LLC*, No. 2:13-CV-1093, 2015 WL 1431906, at *3 (E.D. Tex. Mar. 30, 2015).

Ruiz Foods is not aware of any third-party witnesses over which this Court has absolute subpoena power. The Northern District of Ohio, however, would have absolute subpoena power

over the prosecuting attorneys. *See, e.g.*, *In re Acer Am. Corp.*, 626 F.3d 1252, 1256 (Fed. Cir. 2010) (citing location of prosecuting attorneys as fact favoring transfer); *Nidec Motor Corp. v. Broad Ocean Motor LLC*, No. 2:15-CV-443, 2016 WL 776986, at *3 (E.D. Tex. Feb. 29, 2016) (same). Thus, this factor weighs in favor of transfer because the Northern District of Ohio has absolute subpoena power over at least some third-party witnesses.

### d. Northern District of Ohio is More Convenient for Most Witnesses.

The Northern District of Ohio is more convenient for the inventor, MacroPoint's witnesses, and anticipated third-party witnesses. "The convenience of the witnesses is probably the single most important factor in a transfer analysis." *In re Genentech, Inc.*, 566 F.3d 1338, 1342 (Fed. Cir. 2009). While this factor considers all parties and witnesses, the convenience to non-party witnesses is afforded greater weight. *See NovelPoint Learning LLC v. LeapFrog Enterprises, Inc.*, 6:10-CV-229, 2010 WL 5068146, at *6 (E.D. Tex. Dec. 6, 2010).

The FourKites-MacroPoint dispute is pending in Cleveland, Ohio. Ex. K. MacroPoint and the third-party prosecuting attorney Luis Carrion are also in Cleveland. Ex. C. The inventor, Mr. Adelson, resides in Highland Heights, Ohio—a suburb approximately ten miles from Cleveland. Ex. A. In contrast, it is 981 miles from Cleveland to the courthouse in Tyler, Texas. Ex. L.

Cleveland is also more convenient for the third-party FourKites witnesses. The distance from Chicago to Cleveland is approximately 350 miles. Ex. M. The distance could be driven in as little as six hours. *Id.* The distance from Chicago to Tyler is approximately 900 miles. Ex. N. To drive that distance would take at least thirteen hours. *Id.* Furthermore, there are numerous direct flights between Chicago and Cleveland which take about an hour and fifteen minutes, thereby allowing witnesses to avoid overnight stays. In contrast, there are no direct flights from Chicago to Tyler and it would be virtually impossible for a Chicago area witness to travel to

Tyler and return to Chicago on the same day. Ex. O *See Volkswagen*, 371 F.3d at 205 (observing that overnight stays increase the time that witnesses need to be away from home).

These differences are not insignificant. Cleveland witnesses could easily attend trial without incurring any travel or lodging expenses, and without being away from their homes. FourKites witnesses could attend trial, without staying overnight in Cleveland. In contrast, these witnesses could not attend trial in Tyler without at least a half-day of travel each way, and at least a one night—more likely a two night—stay. This represents not only additional costs in terms of airfare and hotels, but also time away from family and from their respective businesses.

Ruiz Foods' witnesses will be inconvenienced regardless. Dinuba is located outside Fresno, California. Ex. P. Whether these witnesses travel to Tyler or Cleveland, they will incur a day of travel each way, and need to stay overnight at least two days. Exs. Q, R. While Tyler may be closer than Cleveland, practically speaking the differences in convenience are negligible, and far outweighed by the gains in convenience for the MacroPoint witnesses and, most importantly, the non-party FourKites and Ohio witnesses.

> **e.     The Northern District of Ohio Has a Significant Local Interest in the Resolution of this Case.**

MacroPoint is a Cleveland, Ohio company, and first chose its home forum—the Northern District of Ohio—to assert its patents against the FourKites technology. While it failed, and many of its patents have already been invalidated, it must have no doubt believed that the people of its home forum, and not the people of the Eastern District of Texas, were those who have a vested interest in the outcome of this litigation. Indeed, "[j]ury duty is a burden that ought not to be imposed upon the people of a community which has no relation to the litigation." *Volkswagen*, 371 F.3d at 206. The local interest factor is strong when "the cause of action calls into question the work and reputation of several individuals residing in or near that district and

who presumably conduct business in that community." *Hoffman-La Roche*, 587 F.3d at 1336.

The Eastern District of Texas has no localized interest in this dispute. Although Ruiz Foods has a food manufacturing facility in Denison, the allegedly infringing activities—monitoring the location of vehicles carrying freight of Ruiz or location of freight or location of both vehicles and freight as part of its day-to-day business operations—is done throughout the country and supervised from its headquarters in California. Ex. D at ¶ 4–6. Thus, the Eastern District of Texas has "no more or less of a meaningful connection to this case than any other venue." *TS Tech*, 551 F.3d at 1321.

### f. The Remaining Factors Are Neutral.

The speed with which a case can come to trial and be resolved may be relevant to transfer. *In re Genentech, Inc.*, 566 F.3d 1338, 1347 (Fed. Cir. 2009) (discussing district court's crediting of Federal Judicial Caseload Statistics). To the extent median time interval to trial is relevant, the 2015 Federal Judicial Caseload Statistics indicates that the median time interval to trial in the Eastern District of Texas is 22.1 months, which is negligibly different than the Northern District of Ohio's time to trial of 22.2 months. Ex. S. Ultimately, this is the "most speculative" factor. *Promote Innovation LLC v. Leviton Mfg. Co.*, No. 2:10-CV-235, 2011 WL 672663, at *5 (E.D. Tex. Feb. 17, 2011). Finally, there should be no dispute that both the Eastern District of Texas and the Northern District of Ohio are equally familiar with and capable of applying the governing patent laws, and that there exist no unnecessary conflicts of law to be resolved. Therefore, each of these factors is neutral.

### B. Alternatively, This Case Should Be Stayed.

To the extent the Court finds this case should not be transferred, it should be stayed pending the resolution of the FourKites-MacroPoint dispute under the customer-suit exception and resolution of MacroPoint's appeal of the Ohio Court's invalidity decision.

13

### 1.      This Is a Classic Customer-Suit Situation.

After first suing—and losing—to the supplier of the technology at issue here, namely FourKites, MacroPoint came to this Court to sue a customer/user of the same technology.

FourKites, however, has filed an action in the same court that already has addressed MacroPoint's patents and its technology, the Northern District of Ohio. The suit seeks, among other things, declaratory judgments of non-infringement and patent invalidity for the same patents-in-suit. Ex. G. As the supplier of the allegedly infringing products and services, FourKites' suit should "take precedence" because it is the "'true defendant' in the dispute." *Nintendo*, 756 F.3d at 1365.

The issues in this case are duplicative of, and subsumed by, the issues presented in the FourKites-MacroPoint dispute. In disposing of the FourKites-MacroPoint dispute, the Ohio Court will resolve the primary questions in this case—whether the patents-in-suit are valid and whether the use of FourKites' freight tracking products and services infringe any of their claims.[5] Ex. G. In such a situation, "it is clear that there was no need to proceed with" this action because the one in Ohio "may suffice." *In re Google Inc.*, 588 Fed. App'x 988, 990 (Fed. Cir. 2014). "The only potential results of adjudicating these cases in parallel fashion would be . . . wasteful and unnecessary litigation . . . [or] conflicting decisions." *Id.*

Accordingly, to the extent that the Court decides against transfer, the Court should stay this customer suit pending resolution of the FourKites-MacroPoint dispute.

### 2.      A Discretionary Stay is Also Appropriate.

Finally, at a minimum, the Court should stay these proceedings pending resolution of MacroPoint's appeal of the Ohio Court's prior decision. A stay will not cause any prejudice

---

[5] Ruiz Foods agrees to be bound by the Ohio Court's determination of whether the patents-in-suit are valid and whether the use of FourKites' freight tracking products and services infringes any of their claims.

because this case is at its inception—discovery has not even begun, let alone been completed, and no trial date or *Markman* hearing has been set. Rather than prejudice a party, a stay will benefit everyone, including the Court, because the Federal Circuit's decision will inevitably inform the Court and the parties' positions in this case. If the case is not stayed, and the parties proceed in parallel with that appeal, then work will need to be redone and resources wasted in light of the Federal Circuit's reasoning. Therefore, the Court should exercise its discretion and its inherent authority to control its docket by entering a stay in this case pending resolution of the MacroPoint appeal.

## V.    CONCLUSION

WHEREFORE, Defendant Ruiz Foods Products, Inc. prays the Court enter an order granting this motion and transferring this case the United States District Court for the Northern District of Ohio, or in the alternative, staying this case pending resolution of *FourKites, Inc. v. MacroPoint, LLC*, Case No. 15-cv-2703 (N.D. Ohio) and resolution of *MacroPoint, LLC v. FourKites, Inc.*, Case No. 16-1286 (Fed. Cir.), and for all other relief that it deems just and proper.

Dated: November 11, 2016                              Respectfully submitted,

                                                      */s/ E. Glenn Thames, Jr.*
Gary E. Hood, Lead Counsel                            E. Glenn Thames, Jr.
Illinois Bar No. 6281580                              Texas Bar No. 00785097
ghood@polsinelli.com                                  glennthames@potterminton.com
Adam S. Weiss                                         POTTER MINTON
Illinois Bar No. 6256842                              A PROFESSIONAL CORPORATION
aweiss@polsinelli.com                                 110 N. College Avenue, Suite 500
Mark Deming                                           Tyler, TX 75702
Illinois Bar No. 6299631                              Telephone: 903-597-8311
mdeming@polsinelli.com                                Facsimile: 903-593-0846
POLSINELLI PC
161 N. Clark Street, Suite 4200
Chicago, IL 60601
Telephone: 312-819-1900                               *Attorneys for Defendant*
Facsimile: 312-819-1910                               *Ruiz Food Products, Inc.*

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that a true and correct copy of the above and foregoing document has been served on November 11, 2016 to all counsel of record who are deemed to have consented to electronic service via the Court's CM/ECF system per Local Rule CV-5(a)(3). Any other counsel of record will be served by U.S. first class mail.

*/s/ E. Glenn Thames, Jr.*
E. Glenn Thames, Jr.

## <u>CERTIFICATE OF CONFERENCE</u>

The undersigned hereby certifies that counsel for Ruiz Food Products, Inc. has complied with the meet and confer requirement in Local Rule CV-7(h).  This motion is opposed.  The personal conference required by Local Rule CV-7(h) was conducted on November 10, 2016 via telephone conference with the following participants:  Michael C. Smith for Plaintiff and E. Glenn Thames, Jr. for Defendant.  No agreement could be reached because the parties could not agree to the relief requested.  Discussions have conclusively ended in an impasse, leaving an open issue for the court to resolve.

*/s/ E. Glenn Thames, Jr.*
E. Glenn Thames, Jr.