**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION**

| | | |
|---|---|---|
| MACROPOINT, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No: 6:16-cv-1133-RWS-KNM |
| | ) | |
| RUIZ FOOD PRODUCTS, INC., | ) | |
| | ) | |
| Defendant. | ) | |

**REPLY IN SUPPORT OF RUIZ FOOD PRODUCTS INC.'S MOTION TO TRANSFER
OR, IN THE ALTERNATIVE, STAY PENDING RELATED LITIGATION**

**TABLE OF CONTENTS**

I. MacroPoint's "Judge Shopping" Allegation is Specious........................................ 1

II. Ruiz Foods Has Demonstrated A Proper Basis for Transfer. ................................ 2

III. The Customer-Suit Exception Applies. .................................................................. 4

IV. Conclusion. ............................................................................................................. 5

## TABLE OF ABBREVIATIONS

| Abbreviation | Meaning |
|---|---|
| MacroPoint | Plaintiff MacroPoint, LLC |
| FourKites | Non-Party FourKites, Inc. (technology supplier) |
| MP Br. | MacroPoint's Brief, dkt. # 24 |
| RF Br. | Ruiz Foods' Brief, dkt. # 13 |
| Ruiz Foods | Defendant Ruiz Food Products, Inc. (technology customer) |
| Ohio Court | United States District Court for the Northern District of Ohio |
| the '659 patent | United States Patent No. 9,429,659 |
| the '358 patent | United States Patent No. 8,275,358 |
| the patents-in-suit | Collectively, the '659 and the '358 patent |

MacroPoint is desperate to avoid litigating its patents in the very court it initially chose.[1] However, MacroPoint has failed to identify anything—a witness, documents, or evidence of some type—that would make this district a more convenient forum than the Northern District of Ohio. The sources of proof are largely in Chicago and Ohio. Witnesses, in particular the inventor and third-party witnesses, are in Chicago and Ohio. Compulsory process is available, at least partially, in Ohio, but completely unavailable here. And MacroPoint has conceded that all other relevant factors are neutral.[2] In sum, this is a case "[w]ith nothing on the transferor-forum side of the ledger." *See In re Toyota Motor Corp.*, 747 F.3d 1338, 1341 (Fed. Cir. 2014).

I.  **MacroPoint's "Judge Shopping" Allegation is Specious.**

Ruiz Foods and FourKites did not pick the Ohio Court or Judge Gaughan—MacroPoint did. RF Br. at 4–5. It filed this case here, only after losing in its home court,[3] *id.* at 5, no doubt viewing this Court as "more convenient" because it potentially affords a second bite at the apple. MacroPoint is so desperate to avoid the judge who expended substantial time and effort learning the subject technology, ultimately invalidating its patents, that it has opposed a motion to reassign FourKites' declaratory action to Judge Gaughan.[4] *See* Ex. A. Given this course of

---

[1] Its position is not unexpected given that the Ohio Court found all five of the then-asserted patents invalid. Now that the Federal Circuit has summarily affirmed that decision—a fact conspicuously absent from MacroPoint's brief—it is specious, at best, for MacroPoint to argue that Ruiz Foods is the party who is "judge shopping."
[2] MacroPoint fails to argue that any of the convenience factors weigh against transfer. Instead, it alleges either that Ruiz Foods has not established that certain factors weigh in favor of transfer, *see* MP Br. at 6–7 ("Ruiz has no support for its argument that judicial economy weighs in favor of transfer"); *id.* at 8 (access to sources of proof "does not favor transfer"); *id.* at 9 (availability of compulsory process "does not weigh in favor of transfer"), or that the factors are simply neutral. *Id.* at 9 (cost of witness attendance "is neutral in the transfer analysis"); *id.* at 10 (all public interest factors "are neutral at best").
[3] Although MacroPoint conspicuously failed to mention it in its opposition brief, the Federal Circuit Court of Appeals has already summarily affirmed that decision *de novo*.
[4] MacroPoint's argument about a prior case against Salebug.com, LLC and Pegasus TransTech Corporation is a red herring. For one, that case was also in the U.S. District Court for the Northern District of Ohio—before its recent patent invalidity defeat—clearly its venue of choice. Moreover, Judge Gwin, who presided over that case, was never presented with a substantive

1

conduct, it strains credulity for MacroPoint to suggest that it is FourKites and Ruiz Foods who are "judge shopping." The only connection with this district is a manufacturing facility in Denison. Ruiz Foods is but one of many of FourKites' customers, and the Denison facility has nothing to do with this case—the accused technology is not housed there, the decisions to use it were not made there, and the decision makers do not reside there. Dkt. # 13-4 at ¶¶ 4–6.

## II. Ruiz Foods Has Demonstrated A Proper Basis for Transfer.

MacroPoint argues that the instant motion should be denied by suggesting that Ruiz Foods does not have sufficient connections to Ohio. However, MacroPoint does not genuinely dispute that this is a case that "might have been brought" in Ohio. While MacroPoint claims "[t]he assertions of patent infringement in this case are not based on Ruiz Foods' engagement of or relationship with distributors in Ohio," MP Br. at 6, its complaint tells another story: "Ruiz operate[s] trucks or vehicles to deliver freight . . . to various distributors or retailers. Ruiz uses machines or groups of machines to monitor" those deliveries, which is the basis for MacroPoint's allegations of infringement.[5] Dkt. # 1 at ¶ 5. Ruiz Foods is no more or less subject to personal jurisdiction in this district than in Ohio.

The threshold question cleared, and unable to argue that any factors weigh *against* transfer, MacroPoint mischaracterizes Ruiz Foods' arguments to suggest that Ruiz Foods did not carry its burden. First, MacroPoint completely discounts judicial economy on the basis that the FourKites' declaratory judgment action was filed after the instant case. MP Br. at 5–6. As Ruiz Foods argued in its opening brief, judicial economy here is primarily based on the Ohio Court's

---

motion that would have required him to even read the patents, let alone dig into the hundreds of pages of briefing and exhibits that Judge Gaughan considered.
[5] The claimed "groups of machines" and systems include "mobile device[s]" carried by the truck driver. *See, e.g.*, dkt. # 1 at ¶¶ 26, 44. Thus, according to MacroPoint's complaint, it could have sued Ruiz Foods in any district in which it delivers freight. Instead, MacroPoint specifically chose the Eastern District of Texas for an improper purpose.

substantial experience with the prior FourKites-MacroPoint case.[6] *See* RF Br. at 8 ("The patents-in-suit concern the same subject matter and technology that was **previously litigated** in the Ohio Court." (emphasis added)). Those patents are virtually indistinguishable from the patents-in-suit—both the '659 patent, which is from the same family as those addressed by the Ohio Court, as well as the '358 patent, which is from a different family but still not meaningfully different.[7]

Second, MacroPoint ignores the third-party FourKites documents and witnesses that will constitute the bulk of the evidence in this case. Ruiz Foods uses tracking services developed and sold to it by FourKites. *See* Ahlin Decl., Dkt. # 13-4 at ¶ 6. Infringement issues will focus on the FourKites service, and the technical information about that service is possessed by FourKites. Despite this unassailable fact, MacroPoint inexplicably argues that FourKites' "location is not relevant to the venue analysis." MP Br. at 8. While in the usual case "the bulk of the relevant evidence usually comes from the accused infringer," *see In re Genentech, Inc.*, 566 F.3d 1338, 1345 (Fed. Cir. 2009), in this case the bulk of the evidence will come from FourKites. MacroPoint has not argued otherwise, nor can it. Moreover, because FourKites is a third-party, the convenience of accessing its witnesses and sources of proof is afforded greater weight. *NovelPoint v. LeapFrog*, 2010 WL 5068146, at *6 (E.D. Tex. Dec. 6, 2010) (collecting cases).

Next, MacroPoint attempts to muddy the waters by arguing that this Court might exercise subpoena power over unidentified "shippers," or that trial witnesses might prefer to arrive early

---

[6] The declaratory judgment action makes the judicial economy factor that much more important, and it should not be ignored simply because it was filed after the instant case—it is part of the broader dispute that MacroPoint started in its first forum of choice, the Ohio Court.

[7] Despite being from a separate patent family, substantial portions of the written description of the '358 patent are a nearly verbatim copy of the written description of the other invalid patents. *Compare, e.g.*, Ex. B at 1:15–34 *with* Ex. C at 1:20–39; *also* Ex. B at 1:41–2:8 *with* Ex. C at 1:51–2:16; *also* Ex. B at 3:24–55 *with* Ex. C at 3:63–4:27; *also* Ex. B at 5:56–7:59 *with* Ex. C at 9:33–11:28; *also* Ex. B at 8:8–10:8 *with* Ex. C at 13:3–15:9. As the identical figures in the two sets of patents make clear, the '358 patent is just directed to one part of the alleged "invention"— obtaining consent—that is also the subject-matter of MacroPoint's other patents. *See* Ex. D.

and stay overnight "so that they can prepare with counsel." MP Br. at 8–9. It also alleges that "[t]his forum is absolutely more convenient for any employees of the Ruiz Foods facility in Denison, Texas that may testify at trial," but fails to say who those witnesses are, what evidence they might possess, or what relevancy they might have to this case. *Id.* at 9. Speculative, nonspecific arguments likes these deserve no weight. *In re Apple Inc.*, 743 F.3d 1377, 1379 (Fed. Cir. 2014) (approving of district court's dismissal of "vague assertions and seemingly unknown relevance and location of potential sources" as too speculative for consideration).

Finally, MacroPoint misstates the law, arguing that "any claim that MacroPoint's witnesses will be inconvenienced in Texas is mooted by the fact that MacroPoint selected this forum." MP Br. at 9. While it was once presumed that a plaintiff's choice of forum was necessarily the most convenient forum for the plaintiff and its witnesses, the Federal Circuit—interpreting Fifth Circuit law—has long held that a plaintiff's choice of venue is not a separate factor and should not be accorded undue deference. *See, In re TS Tech USA Corp.*, 551 F.3d 1315 (Fed. Cir. 2008). In other words, the Court must analyze the relative convenience for MacroPoint's witnesses and evidence, and cannot simply take MacroPoint at its word.

**III.     The Customer-Suit Exception Applies.**

Given its extensive argument regarding the first-to-file rule,[8] MacroPoint's failure to address *In re Google*—which Ruiz Foods cited in its opening brief, RF Br. at 7, 14, and which is procedurally similar to the instant case—is telling. There, as here, the patentee sued customers (*i.e.*, Ruiz Foods) of a manufacturer (*i.e.*, FourKites) for direct infringement, and the

---

[8] MacroPoint's first-to-file argument is a classic strawman. MP Br. at 3. This is not a first-to-file scenario—there is no other case between these parties. But even if it were, whether to apply the first-to-file rule is not a question for this court. "Under the first-to-file rule . . . **the court in which the case was last filed** may refuse to hear it if the issues raised by the cases substantially overlap." *Cadle Co. v. Whataburger of Alice, Inc.*, 174 F.3d 599, 603 (5th Cir. 1999) (emphasis added).

4

manufacturer in turn filed a declaratory judgment action in another court. 588 Fed. App'x 988, 989–92 (Fed. Cir. 2014). The Federal Circuit found an abuse of discretion when this Court denied a motion to stay the customer cases in view of the later-filed manufacturer suit.[9] *Id.*

MacroPoint also argues that it is "critical[]" that Ruiz Foods is a "direct infringer", rather than a reseller of the accused products. MP Br. at 11–12 (citing *Tegic Commc'n v. Board of Regents of Univ. of Tex. Sys.*, 458 F.3d 1335 (Fed. Cir. 2006)). MacroPoint's argument is an invalid distinction the Court should reject. *Tegic* does not, however, stand for the proposition that the customer-suit exception is only applicable to reseller cases.[10] Whether Ruiz Foods is a reseller is but one consideration—the "the primary question is whether the issues and parties are such that the disposition of one case would be dispositive of the other." *See Katz v. Siegler*, 909 F.2d 1459, 1463 (Fed. Cir. 1990). Here, the likelihood that the FourKites-MacroPoint case will be dispositive of this action demands application of the customer-suit exception.[11] *See Select Retrieval, LLC v. L.L. Bean, Inc.*, No. 2:12-CV-00003-NT, 2013 WL 1099754, at *4–5 (D. Me. Mar. 15, 2013) (applying exception where defendant was an end-user). Alternatively, the Court should exercise its discretion to grant a stay pending the FourKites-MacroPoint matter.

## IV. Conclusion.

WHEREFORE, Ruiz Foods prays the Court grants its motion and all other proper relief.

---

[9] While *In re Nintendo of Am., Inc.*, 756 F.3d 1363 (Fed. Cir. 2014), is procedurally slightly different (the plaintiff had sued both the manufacturer and its customers) it is also informative because it also involved allegations of direct infringement by the customers. *Id.* at 1364. The Federal Circuit again found an abuse of discretion when this Court denied a motion to sever and transfer the manufacturer case to a more convenient venue, and to stay the remaining customer suits in the interim. *Id.* at 1365–66. Allegations of direct infringement are in no way controlling.
[10] The only place the word "reseller" appears in *Tegic* is in a description of the appellee's positions. 458 F.3d at 1343.
[11] Ruiz Foods is accused of infringing the MacroPoint patents solely because it uses the FourKites' freight tracking services as they are supplied to Ruiz Foods. Ruiz Foods makes no modifications that would alter the infringement analysis. Ruiz Foods will be bound by the decision of the FourKites-MacroPoint suit. FourKites is the only supplier of Ruiz Foods' freight tracking technology. *See* Ahlin Decl., Dkt. # 13-4.

5

Dated: December 19, 2016            Respectfully submitted,

           */s/ E. Glenn Thames, Jr.*

Gary E. Hood, Lead Counsel            E. Glenn Thames, Jr.
Illinois Bar No. 6281580            Texas Bar No. 00785097
ghood@polsinelli.com            glennthames@potterminton.com
Adam S. Weiss            POTTER MINTON
Illinois Bar No. 6256842            A PROFESSIONAL CORPORATION
aweiss@polsinelli.com            110 N. College Avenue, Suite 500
Mark Deming            Tyler, TX 75702
Illinois Bar No. 6299631            Telephone: 903-597-8311
mdeming@polsinelli.com            Facsimile: 903-593-0846
POLSINELLI PC
161 N. Clark Street, Suite 4200
Chicago, IL 60601
Telephone: 312-819-1900            *Attorneys for Defendant*
Facsimile: 312-819-1910            *Ruiz Food Products, Inc.*

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a true and correct copy of the above and foregoing document has been served on December 19, 2016 to all counsel of record who are deemed to have consented to electronic service via the Court's CM/ECF system per Local Rule CV-5(a)(3). Any other counsel of record will be served by U.S. first class mail.

           */s/ E. Glenn Thames, Jr.*