# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## TYLER DIVISION

|  |  |  |
|---|---|---|
| MACROPOINT, LLC | § | |
| | § | |
| Plaintiff, | § | |
| | § | CASE NO. 6:16-CV-1133-RWS-KNM |
| v. | § | |
| | § | |
| RUIZ FOOD PRODUCTS, INC. | § | |
| | § | |
| Defendant. | § | |
| | § | |

## MEMORANDUM OPINION AND ORDER

This Memorandum Opinion construes the disputed claim terms in United States Patent Nos. 8,275,358 ("the '358 Patent") and 9,429,659 ("the '659 Patent") asserted in this suit by MacroPoint, LLC.

On September 28, 2017, the parties presented oral arguments on the disputed claim terms at a *Markman* hearing. For the reasons stated herein, the court **ADOPTS** the constructions set forth below.

## BACKGROUND

Plaintiff, MacroPoint, LLC ("MacroPoint") alleges that Defendant infringes the '358 Patent and the '659 Patent (collectively, the "patents-in-suit"). The patents-in-suit relate to systems and methods for obtaining and monitoring the location of a mobile device, a vehicle, or a freight. *See* '358 Patent, '659 Patent.

## APPLICABLE LAW

"It is a 'bedrock principle' of patent law that 'the claims of a patent define the invention to which the patentee is entitled the right to exclude.'" *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312

(Fed. Cir. 2005) (en banc) (quoting *Innova/Pure Water Inc. v. Safari Water Filtration Sys., Inc.*, 381 F.3d 1111, 1115 (Fed. Cir. 2004)). The Court examines a patent's intrinsic evidence to define the patented invention's scope. *Id.* at 1313–1314; *Bell Atl. Network Servs., Inc. v. Covad Commc'ns Group, Inc.*, 262 F.3d 1258, 1267 (Fed. Cir. 2001). Intrinsic evidence includes the claims, the specification, and the prosecution history. *Phillips*, 415 F.3d at 1312–13; *Bell Atl. Network Servs.*, 262 F.3d at 1267. Courts give claim terms their ordinary and customary meaning as understood by one of ordinary skill in the art at the time of the invention in the context of the patent as a whole. *Phillips*, 415 F.3d at 1312–13; *Alloc, Inc. v. Int'l Trade Comm'n*, 342 F.3d 1361, 1368 (Fed. Cir. 2003).

Claim language provides substantial guidance in the Court's construction of claim terms. *Phillips*, 415 F.3d at 1314. "[T]he context in which a term is used in the asserted claim can be highly instructive." *Id.* Other claims, asserted and un-asserted, can provide additional instruction because "terms are normally used consistently throughout the patent." *Id.* The differences among claims, such as additional limitations in dependent claims, can provide further guidance. *Id.*

"[C]laims 'must be read in view of the specification, of which they are a part.'" *Id.* (quoting *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 979 (Fed. Cir. 1995), *aff'd*, 517 U.S. 370, 116 S. Ct. 1384, 134 L. Ed. 2d 577 (1996)). "[T]he specification 'is always highly relevant to the claim construction analysis. Usually, it is dispositive; it is the single best guide to the meaning of a disputed term.'" *Id.* (quoting *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996)); *see also Teleflex, Inc. v. Ficosa N. Am. Corp.*, 299 F.3d 1313, 1325 (Fed. Cir. 2002). In the specification, a patentee may define his own terms, give a claim term a different meaning than the ordinary meaning of the term, or disclaim or disavow the claim scope. *Phillips*, 415 F.3d at 1316. While the Court generally presumes terms possess their ordinary meaning, statements of

clear disclaimer can overcome this presumption. *See SciMed Life Sys., Inc. v. Advanced Cardiovascular Sys., Inc.*, 242 F.3d 1337, 1343–44 (Fed. Cir. 2001). Further, this presumption does not arise when the patentee acts as his own lexicographer. *See Irdeto Access, Inc. v. EchoStar Satellite Corp.*, 383 F.3d 1295, 1301 (Fed. Cir. 2004).

The specification may resolve ambiguous claim terms "where the ordinary and accustomed meaning of the words used in the claims lack sufficient clarity to permit the scope of the claim to be ascertained from the words alone." *Teleflex, Inc.*, 299 F.3d at 1325. For example, "[a] claim interpretation that excludes a preferred embodiment from the scope of the claim 'is rarely, if ever, correct." *Globetrotter Software, Inc. v. Elan Computer Group Inc.*, 362 F.3d 1367, 1381 (Fed. Cir. 2004) (quoting *Vitronics Corp.*, 90 F.3d at 1583). But, "[a]lthough the specification may aid the court in interpreting the meaning of disputed language in the claims, particular embodiments and examples appearing in the specification will not generally be read into the claims." *Constant v. Advanced Micro-Devices, Inc.*, 848 F.2d 1560, 1571 (Fed. Cir. 1988); *see also Phillips*, 415 F.3d at 1323.

The prosecution history is another tool to supply the proper context for claim construction because a patentee may define a term during prosecution of the patent. *Home Diagnostics Inc. v. LifeScan, Inc.*, 381 F.3d 1352, 1356 (Fed. Cir. 2004) ("As in the case of the specification, a patent applicant may define a term in prosecuting a patent"). The well-established doctrine of prosecution disclaimer "preclud[es] patentees from recapturing through claim interpretation specific meanings disclaimed during prosecution." *Omega Eng'g Inc. v. Raytek Corp.*, 334 F.3d 1314, 1323 (Fed. Cir. 2003). The prosecution history must show that the patentee clearly and unambiguously disclaimed or disavowed the proposed interpretation during prosecution to obtain claim allowance. *Middleton Inc. v. 3M Co.*, 311 F.3d 1384, 1388 (Fed. Cir. 2002); *see also Springs Window*

*Fashions LP v. Novo Indus., L.P.*, 323 F.3d 989, 994 (Fed. Cir. 2003) ("The disclaimer . . . must be effected with 'reasonable clarity and deliberateness.'") (citations omitted). "Indeed, by distinguishing the claimed invention over the prior art, an applicant is indicating what the claims do not cover." *Spectrum Int'l v. Sterilite Corp.*, 164 F.3d 1372, 1378–79 (Fed. Cir. 1988) (quotation omitted). "As a basic principle of claim interpretation, prosecution disclaimer promotes the public notice function of the intrinsic evidence and protects the public's reliance on definitive statements made during prosecution." *Omega Eng'g, Inc.*, 334 F.3d at 1324.

Although "less significant than the intrinsic record in determining the legally operative meaning of claim language," the Court may rely on extrinsic evidence to "shed useful light on the relevant art." *Phillips*, 415 F.3d at 1317 (quotation omitted). Technical dictionaries and treatises may help a court understand the underlying technology and the manner in which one skilled in the art might use claim terms, but such sources may also provide overly broad definitions or may not be indicative of how the term is used in the patent. *Id.* at 1318. Similarly, expert testimony may aid the Court in determining the particular meaning of a term in the pertinent field, but "conclusory, unsupported assertions by experts as to the definition of a claim term are not useful." *Id.* Generally, extrinsic evidence is "less reliable than the patent and its prosecution history in determining how to read claim terms." *Id.*

## ANALYSIS

### I.    Disputed Terms in the '358 Patent

The '358 Patent is titled "Providing Notice and Receiving Consent to Obtain Location Information of a Mobile Device," was filed on March 1, 2012, and issued on September 25, 2012. The Abstract states:

> A system for receiving user consent to obtaining location information of a mobile
> device includes a communications interface configured for communication with a

mobile device, a validation logic configured to identify the mobile device at least in part by obtaining an identifier associated with the mobile device, and a notification logic configured to communicate a signal including data representing an automated voice message. The automated voice message provides a notice or the location of a notice including information indicating to the user of the mobile device that consenting to the obtaining of the location information of the mobile device would result in the location information of the mobile device being disclosed. The communications interface is configured to transmit the automated voice message to the mobile device, and to receive from the mobile device data indicating the user consent for obtaining the location information of the mobile device.

a. **"within the telephone call, identifying the mobile device"[1] (Claims 1, and 13)**

| Plaintiff's Proposed Construction | Defendant's Proposed Construction |
|---|---|
| "identifying the mobile device after the telephone connection with the mobile device is initiated and before the connection ends." | No construction necessary; plain and ordinary meaning. |

The underlying dispute is whether the plain and ordinary meaning of "within the telephone call" means "within the telephone call itself, and not during preliminary signals that may be sent while the call is being connected." Doc. No. 59 at 8.

Plaintiff argues that the plain and ordinary meaning of "within the telephone call" means "after the telephone connection with the mobile device is set up and before the telephone connection ends." *Id.*

Defendant argues that the plain and ordinary meaning of "within the telephone call" means "within the telephone call itself, and not during preliminary signals that may be sent while the call is being connected." Doc. No. 59 at 15. Defendant contends that the specification characterizes the methods described in Figures 2 and 3 as merely "exemplary," and discloses no example in which identification of the mobile device occurs before the parties to a phone call participate. *Id.* at 13.

---

[1] During the *Markman* hearing, the parties agreed that "identifying the mobile device" did not need construction. *See* Doc. No. 70, 17:7-9; 23:7-9.

Defendant also argues that the patentee disclaimed "the use of signals sent during the establishment of a telephone connection (before the telephone call itself)." *Id.* Defendant contends that the patentee overcame the Johansson rejection by amending the claims to expressly recite that identification of the mobile device must "take place within the context of a telephone call (not just a voice message, but a live, real time telephone call)." *Id.* (citing Doc. No. 54-6 at 11-12). Defendant argues that the use of signals sent during the establishment of a telephone connection, but before the actual telephone call itself, is inconsistent with the context of "a live, real time telephone call." *Id.*

Claim 1 of the '358 Patent recites (emphasis added):

A computer implemented method for receiving consent from a user of a mobile device to obtaining location information of the mobile device, the method comprising:

> *participating in a telephone call with the mobile device*;
>
> within the telephone call, *identifying the mobile device at least in part by obtaining an identifier associated with the mobile device*;
>
> transmitting to the mobile device *during the telephone call* and automated voice message communicating to the user of the mobile device at least one of:
>
>> a notice including information indicating that consenting to the obtaining of the location information of the mobile device would result in the location information of the mobile device would result in the location information of the mobile device being disclosed, and
>>
>> a location at which to find the notice, wherein the location at which to find the notice is represented by a web address corresponding to a website where, during the telephone call, the user can find the notice indicating to the user that consenting to the obtaining of the location information of the mobile device would result in the location information of the mobile device being disclosed; and
>
> receiving from the mobile device during the telephone call a signal including data indicating consent for obtaining the location information of the mobile device.

Claim 1 explicitly requires the identification to occur "within the telephone call," and the specification clarifies the meaning of "within the telephone call." The specification discloses a

system that includes a communications interface 120—which is configured to participate in telephone calls with a mobile device 110, including calls with a toll free number—and a validation logic 130. '358 Patent at 3:56-4:26. The specification states that "[t]he user of the mobile device 110 may initiate a telephone call by dialing the toll free number." *Id.* at 3:64-66. The specification also states:

> In [this] embodiment, where the communications interface 120 is associated with a toll free number … the validation logic 130 is configured to identify the mobile device 110 at least in part by obtaining the telephone number associated with the mobile device 110 via automatic number identification (ANI).

*Id.* at 4:11-17. Accordingly, the intrinsic evidence indicates that the identification steps occurs within the time period between the initiation of the telephone call by dialing a number and the termination of the call.

The prosecution history further indicates that the identification step must take place within the context of the telephone call. In the May 15, 2012 Office Action, the examiner rejected claim 1 of the '358 Patent as unpatentable over U.S. Patent No. 6,442,391 ("Johansson") in view of U.S. Patent Application Publication No. 2008/0132252 ("Altman"). Doc. No. 54-5 at 4-5. The examiner relied on Altman to fill in a gap left by Johansson, namely the transmission of a voice message. Specifically, the examiner stated the following:

> Johansson teaches transmitting a message communicating to the user of the mobile device but does not specifically disclose transmitting a <u>voice</u> message communicating to the user of the mobile device. However, it is well known in the art the message may be in the form of text or voice message.
> In the same field of endeavor, Altman discloses a messaging utility that can be used to send and receive text or voice messages from users (see Altman, [0094]).

Doc. No. 54-5 at 5 (emphasis in original). The patentee responded by amending the claim to include the phrase "within the telephone call," as a further limitation of the identification step. Doc. No. 54-6 at 3. Specifically, the patentee argued that "[t]he prior art combination, Johansson

and Altman, does not teach … the series of steps of claim 1, which take place within the context of a telephone call (not just a voice message, but a live, real time telephone call)." *Id.* at 12.

Defendant argues that the patentee disclaimed "the use of signals sent during the establishment of a telephone connection (before the telephone call itself)" by amending the claims to expressly recite that identification of the mobile device must "take place within the context of a telephone call (not just a voice message, but a live, real time telephone call)." Doc. No. 59 at 13. (citing Doc. No. 54-6 at 11-12). Defendant contends that the use of signals sent during the establishment of a telephone connection (before the telephone call itself) is inconsistent with the context of "a live, real time telephone call."

However, the question of when a telephone call begins was not the issue or the reason for the amendment. As discussed above, the cited prior art combination did not meet the amended limitations of claim 1, which require the series of steps of claim 1 to "take place within the context of a telephone call (not just a voice message, but a live, real time telephone call)." Doc. No. 54-6 at 12. The meaning and purpose of the arguments presented with that amendment are not a clear and unmistakable disclaimer of "the use of signals sent during the establishment of a telephone connection (before the telephone call itself)." Doc. No. 59 at 13. For prosecution disclaimer to arise, "the alleged disavowing actions or statements made during prosecution [must] be both clear and unmistakable." *Omega Eng'g, Inc. v. Raytek Corp.*, 334 F.3d 1314, 1326 (Fed. Cir. 2003). The amendment does not directly address whether data transmitted after a telephone number is dialed, but before a voice conversation begins, is part of a telephone call.

The parties also rely on extrinsic evidence—the Qwest Enhanced 911 for Private Switch/Automatic Location Identification Service Network Interface Specifications ("QWEST publication")—to support their conflicting positions. Doc. No. 54-7. Plaintiff contends that the

8

QWEST publication indicates that "[w]hen a mobile device user places a telephone call to a toll free number, the act of 'identifying the mobile device' includes obtaining a telephone number associated with the mobile device via automatic number identification (ANI)." Doc. No. 54 at 20. Plaintiff relies on Figure 4.1 of Qwest, Exhibit 7 to demonstrate that ANI is sent once the number is dialed but before the call is disconnected, which is consistent with its proposed construction. *Id.* at 20-21.

Defendant argues that the QWEST publication is extrinsic evidence, which is disfavored in claim construction. Doc. No. 59 at 14. Nevertheless, Defendant argues that the QWEST publication indicates that the ANI is provided before the telephone call itself is connected, which is not "within the telephone call." *Id.*

Ultimately, the QWEST publication is extrinsic evidence and is not particularly helpful in resolving the issue before the Court. The QWEST publication addresses a very specific embodiment, which is not explicitly discussed in the '358 Patent. However, the "SIGNALING SEQUENCE" illustrated in Figure 4-1 begins with "After a PBX station user dials 911." Doc. No. 54-7 at 22. This is consistent with the disclosed embodiment of "[t]he user of the mobile device 110 may initiate a telephone call by dialing the toll free number." '358 Patent at 3:64-66. A person of ordinary skill in the art would understand that the beginning of the "live, real time telephone call," is after the call is initiated by dialing the number.

The Court construes the disputed term **"within the telephone call"** to mean **"within the time period between the initiation of a telephone call by dialing a number and the termination of the call."**

### b. "communications interface" (Claims 19, 20, 21, 24-28, and 30)

| Plaintiff's Proposed Construction | Defendant's Proposed Construction |
|---|---|
| This is not a means-plus-function limitation.<br><br>Not indefinite.<br><br>To the extent the Court determines this is a means-plus-function limitation:<br><br>Function: "participate in a telephone call within a mobile device"<br><br>Structure: "a card; hardware, firmware, software or combinations of each, a 'logic,' a software controlled microprocessor, discrete logic like an application specific integrated circuit (ASIC), a programmed logic device, or a memory device containing instructions" | This is a means-plus-function element to be construed in accordance with 35 U.S.C. § 112, ¶ 6.<br><br>Indefinite.<br><br>Function: "participating in and transmitting and receiving during a telephone call according to an undisclosed algorithm"<br><br>Structure: no corresponding algorithm, structure, material, or acts disclosed for performing recited functions |

The parties originally disputed whether "communications interface" is a means-plus-function term. Doc. No. 59 at 25. During the *Markman* hearing, Defendant provided a compromise construction that concedes that "communications interface" is not a mean-plus-function term.

"A claim limitation that actually uses the word 'means' invokes a rebuttable presumption that § 112, [¶] 6 applies." *Apex Inc. v. Raritan Comput., Inc.*, 325 F.3d 1364, 1371 (Fed. Cir. 2003) (internal quotations omitted). Consequently, "a claim term that does not use 'means' will trigger the rebuttable presumption that § 112, [¶] 6 does not apply." *Id.* The disputed claim term here does not recite the word "means," and thus there is a rebuttable presumption that § 112, ¶ 6 does not apply. Defendant has not cited authority that determined "interface" to be a nonce word or a verbal construct. *Williamson v. Citrix Online LLC*, 792 F.3d 1339, 1350 (Fed. Cir. 2015) ("Generic terms such as 'mechanism,' 'element,' 'device,' and other nonce words that reflect nothing more than verbal constructs may be used in a claim in a manner that is tantamount to using the word 'means'

because they 'typically do not connote sufficiently definite structure.'").

The intrinsic evidence demonstrates that a person of ordinary skill in the art would understand the necessary structure of the "communications interface." The relevant portion of Claim 19 recites (emphasis added):

> wherein the communications interface is *configured to transmit during the telephone call the automated voice message to the mobile device*, and
> wherein the communications interface is further configured to, during the telephone call, receive from the mobile device data indicating the user consent for obtaining the location information of the mobile device.

Claim 19 indicates that the recited "mobile device" is physically separate from the recited "system" because the "communication interface" enables the system to communicate with the mobile device.

In one embodiment, the specification indicates that the "communication interface" is a card device that operably connects disk 606 to computer 600. '358 Patent at 11:62-65. The specification also states that network devices 620 may be connected to computer 600 via communication interface. '358 Patent at 12:29-31. Furthermore, Figure 6 illustrates the "communication interface" is connected to a number of other physical devices (*e.g.*, I/O Ports, Computer, Disk, Network Devices, etc.). Accordingly, the term "communication interface" conveys structure to a person of ordinary skill in the art.

During the *Markman* hearing, Defendant proposed construing "communication interface" to mean "a wired or wireless device that connections a computer to a network." Defendant's Claim Construction Hearing Presentation at 59. Plaintiff continued to argue its proposed construction.

The specification states that the communication interface is "configured to participate in telephone calls" or "initiate the telephone call." '358 Patent at 3:59–4:2. The specification further states that the communication interface can be configured to transmit automated voice messages

and to receive data indicating consent for obtaining location information. *Id.* at 4:44–5:3, 6:42–57. Thus, the specification indicates that the "communication interface" operates as "a wired or wireless device that connects to a mobile device."

The extrinsic evidence is consistent with the intrinsic evidence and defines "interface" as "a circuit, device or port" that allows communication between units. Doc. No. 54-10 at 4. In one embodiment, the "communication" interface may be a card that operably connects disk 606 to computer 600. '358 Patent at 11:62-65. Furthermore, claim 19 requires that the communications interface facilitate communication with the mobile device.

Thus, a person of ordinary skill in the art would understand that the recited "communication interface" is "a wired or wireless device that connects to a mobile device." *See, e.g., Inventio AG v. Thyssenkrupp Elevator Ams. Corp.*, 649 F.3d 1350, 1358 ("[T]he claims indicate that the 'modernizing device' functions as an electrical circuit that receives signals, processes signals, and outputs signals to other components in the patented system."); *Apex Inc. v. Raritan Computer, Inc.*, 325 F.3d 1364, 1372 (Fed. Cir. 2003) ("the term 'circuit' with an appropriate identifier such as 'interface,' 'programming' and 'logic,' certainly identifies some structural meaning to one of ordinary skill in the art.")

The Court construes the disputed term **"communications interface"** to mean **"a wired or wireless device that connects to a mobile device."**

### c. "validation logic" (Claim 19) / "notification logic" (Claim 19, 21, 27)

| Term | Plaintiff's Proposed Construction | Defendant's Proposed Construction |
|---|---|---|
| validation logic | To the extent a construction is required, this term should be construed as "hardware, firmware, software or combinations of each that performs or causes a validation | This is a means-plus-function element to be construed in accordance with 35 U.S.C. § 112, ¶ 6.<br><br>Indefinite. |

| | | |
|---|---|---|
| | action to be performed" <br><br> This is not a means-plus-function limitation. <br><br> To the extent the Court determines this is a means-plus-function limitation: <br><br> Function: "identifying a mobile device" <br><br> Structure: "hardware, firmware, software or a combinations of each, a "logic," a software controlled microprocessor, discrete logic like an application specific integrated circuit (ASIC), a programmed logic device, a memory device containing instructions" | Function: "identifying a mobile device according to an undisclosed algorithm" <br><br> Structure: no corresponding algorithm, structure, material, or acts disclosed for performing recited functions |
| **notification logic** | To the extent a construction is required, this term should be construed as "hardware, firmware, software or combinations of each that performs or causes a notification action to be performed" <br><br> This is not a means-plus-function limitation. <br><br> To the extent the Court determines this is a means-plus-function limitation: <br><br> Function: "communicating information" <br><br> Structure: "hardware, firmware, software or a combinations of each, a "logic," a software controlled microprocessor, discrete logic like an application specific integrated circuit (ASIC), a programmed logic | This is a means-plus-function element to be construed in accordance with 35 U.S.C. § 112, ¶ 6. <br><br> Indefinite. <br><br> Function: "communicating an automatic voice message during a telephone call according to an undisclosed algorithm" <br><br> Structure: no corresponding algorithm, structure, material, or acts disclosed for performing recited functions |

| | device, a memory device containing instructions" | |
|---|---|---|

The parties originally disputed whether the terms "validation logic" and "notification logic" are means-plus-function terms. During the *Markman* hearing, Defendant provided compromise constructions that concede that "validation logic" and "notification logic" are not mean-plus-function terms. Specifically, Defendant proposed construing "validation logic" and "notification logic" to mean "computer hardware, firmware, software, or a combination thereof." The parties also agreed during the *Markman* hearing that the Court only needs to construe the term "logic" because "validation" and "notification" are further identified in the claim language.[2] Doc. No. 70 at 79:12-80:2.

The specification defines "logic" as follows:

> A "logic," as used herein, includes but is not limited to *hardware, firmware, software or combinations of* each to perform a function(s) or an action(s), or to cause a function or action from another logic, method, or system. For example, based on a desired application or needs, a logic may include a software controlled microprocessor, discrete logic like an application specific integrated circuit (ASIC), a programmed logic device, a memory device containing instructions, or the like. A logic may include one or more gates, combinations of gates, or other circuit components. A logic may also be fully embodied as software. Where multiple logical logics are described, it may be possible to incorporate the multiple logical logics into one physical logic. Similarly, where a single logical logic is described, it may be possible to distribute that single logical logic between multiple physical logics.

'358 Patent at 13:47-61 (emphasis). Thus, the intrinsic evidence indicates that the "logic" is "computer hardware, firmware, software, or a combination thereof." device.

Given the parties' agreement that the terms "notification" and "validation" no longer require construction, the Court construes the disputed term **"logic"** to mean **"computer hardware, firmware, software, or a combination thereof."**

[2] The parties agreed that "validation" means "identifying the mobile device." Doc. No. 70, 75:7-10 and 77:15-16. Plaintiff is not permitted to argue that "validation" means something other than "identifying the mobile device."

### d. "receiving from the mobile device during the telephone call a signal including data indicating consent for obtaining the location information of the mobile device" (Claim 1)

| Plaintiff's Proposed Construction | Defendant's Proposed Construction |
| --- | --- |
| "before the end of the telephone call, receiving from the mobile device one or more electrical or optical signals, analog or digital signals, data, one or more computer or processor instructions, messages, a bit or bit stream, or other means that can be received, transmitted or detected that signifies that consent to obtain the location information of the mobile device was granted" | No construction necessary.<br><br>Plain and ordinary meaning. |

The parties dispute whether the phrase "receiving from the mobile device during the telephone call a signal including data indicating consent for obtaining the location information of the mobile device" requires construction. This dispute centers on the meaning of the term "signal" and the phrase "during the telephone call."[3]

### i. "a signal"

Plaintiff's proposed construction for the term "signal" comes directly from the specification. The specification defines the term as "one or more electrical or optical signals, analog or digital signals, data, one or more computer or processor instructions, messages, a bit or bit stream, or other means that can be received, transmitted or detected." '358 Patent at 14:8-13. Defendant argues that this definition would not assist a jury, but would rather confuse a jury. Doc. No. 59 at 16. Defendant argues that the specification's definition is circular because it uses the word "signals" twice. *Id.* at 16-17. Defendant also argues that the construction does not appear to

---

[3] Plaintiff originally asked the Court to construe the phrase "including data indicating consent for obtaining the location information of the mobile device." During the *Markman* hearing, Plaintiff agreed that the phrase "including data indicating consent for obtaining the location information of the mobile device" does not require construction. Doc. No. 70 at 46:17-25.

resolve any dispute as to the scope of the claims. *Id.* at 17.

Defendant's arguments are unpersuasive. Plaintiff's proposed construction is explicitly how patentee defined the term, and provides necessary insight as to the meaning of the term, which clarifies any dispute over the scope of the claim. Further, Defendant's argument that the definition is circular fails because the definition provides specific examples of types of signals (*e.g.*, electrical signals, digital signals, etc.).

### ii. "during the telephone call"

The phrase "during the telephone call" was added to claim 1 at the same time the phrase "within the telephone call" was added to claim 1. The arguments made by the patentee for the phrase "within the telephone call" equally apply to "during the telephone call." Thus, for the reasons discussed above, the phrase "during the telephone call" will be construed to mean "during the time period between the initiation of a telephone call by dialing a number and the termination of the call."

The Court construes the disputed terms as follows:

**"during the telephone call"** means **"during the time period between the initiation of a telephone call by dialing a number and the termination of the call."**

**"a signal"** means **"one or more electrical or optical signals, analog or digital signals, data, one or more computer or processor instructions, messages, a bit or bit stream, or other means that can be received, transmitted or detected."**

## II.     Disputed Terms in the '659 Patent

The '659 Patent is titled "Machine or Group of Machines for Monitoring Location of a Vehicle or Freight Carried by a Vehicle," was filed on January 4, 2016, and issued on August 30, 2016. The Abstract states:

A machine or group of machines for monitoring location of at least one of a vehicle or freight carried by the vehicle includes a server comprising a central processing unit, a memory, a clock, and a server communication transceiver that receives location information of a mobile device, the mobile device comprising a GPS receiver, a microprocessor and a wireless communication transceiver coupled to the GPS receiver, the mobile device comprising the GPS receiver programmed to receive data sent by a plurality of GPS satellites, calculate location information of the mobile device comprising the GPS receiver and transmit the location information.

### a. "receive a signal that indicates that consent was given to the transmission of location information" (Claims 1 and 2)

| Plaintiff's Proposed Construction | Defendant's Proposed Construction |
|---|---|
| "receive one or more electrical or optical signals, analog or digital signals, data, one or more computer or processor instructions, messages, a bit or bit stream, or other means that can be received, transmitted or detected that indicates that consent to send location information was given" | No construction necessary. Plain and ordinary meaning. |

During the *Markman* hearing, the parties agreed that there was no claim scope dispute as to "signal" because the specification provided an explicit definition. Doc. No. 70 at 52:9-12. Further, the Court has construed "signal" in the previous disputed term to comport with the specification's definition.

The remainder of Plaintiff's proposed construction redrafts claim 2 of the '659 Patent from a signal "that indicates that consent was given to transmission of location information" to a signal "that indicates that consent to send location information was given." Plaintiff has not provided a persuasive reason to redraft the claim as it proposes.

Therefore, the Court construes the disputed term **"a signal"** to mean **"one or more electrical or optical signals, analog or digital signals, data, one or more computer or processor instructions, messages, a bit or bit stream, or other means that can be received, transmitted or detected;"** and gives the remaining terms in the phrase their plain and ordinary

meaning.

### b. "receive an indication that consent to transmission of location information has been given" (Claim 23)

| Plaintiff's Proposed Construction | Defendant's Proposed Construction |
| --- | --- |
| Plain and ordinary meaning of "receive a sign or piece of information that consent to sending location information has been given" | No construction necessary. Plain and ordinary meaning. |

The underlying dispute centers on the meaning of "indication." During the *Markman* hearing, the parties agreed that an "indication" includes at least "computer data indicating." Doc. No. 70, 54:16-19; 56:18-21. The parties dispute whether "indication" should mean the same as "signal," which is recited in the other independent claims.

Plaintiff contends that the patentee purposefully chose to use different terms in claims 2 and 23 of the '659 Patent. Doc. No. 60 at 9. Defendant argues that Plaintiff attempts to invoke the doctrine of claim differentiation to argue that claim 23 should be so broad as to include any "sign" of consent. Doc. No. 59 at 22.

The specification states that receiving consent from the communications device for monitoring the location of the vehicle "includes receiving data indicating that the user has performed an action on the communications device." '659 Patent at 13:40-43. For example, the specification states that "the user may have pressed a key in the communication device, touched or swipe a particular portion of the device's screen, shaken the communications device, combinations thereon and so on." *Id.* at 13:43-47. The specification adds that "[i]n another embodiment, the receiving from the communications device consent for monitoring the location of the vehicle includes receiving a voice command from the communications device." *Id.* at 13:47-50. Thus, the intrinsic evidence indicates that an indication is "data indicating that the user has

performed an action on the mobile device."

Plaintiff contends that "indication" should be construed to mean "a sign or piece of information," because claim 23 does not require a "signal." As discussed above, the patentee provided an explicit definition for the term "signal," and used the term in other claims. The patentee did not use "signal" in claim 23, and did not provide an explicit definition of an "indication." However, Plaintiff has not provided any intrinsic support for construing "indication" as "sign or piece of information." Accordingly, "indication" should be construed to mean "computer data indicating that the user has performed an action on the mobile device" based on the intrinsic evidence cited above.

The parties also dispute whether a user is required for this claim term. Defendant argues that the patents-in-suit require express, affirmative user consent to be obtained via the mobile device before tracking. Doc. No. 59 at 17-18. (citing '358 Patent at 2:1–3, 1:9–11, 1:20–22, 1:47–51, 4:47–50, 4:51–56, 4:61–5:3, 6:45–48, 4:6–10; '659 Patent at 2:1–3, 8:40–46). Defendant also argues that:

> a person of ordinary skill in the art would understand that these claim terms would not encompass embodiments in which the consent was provided by someone other than the user, or in which the fact of consent was merely inferred from the fact that location information was being provided.

Doc. No. 59 at 19. Defendant further contends that during prosecution of the '659 Patent, the applicant made arguments attempting to distinguish prior art cited in a third party protest under 37 C.F.R. § 1.291(a). *Id.* at 21 (citing Doc. No. 59-5 at 3, 5, 7). Defendant objects to Plaintiff's construction because it appears to broaden the claims so that something other than a user's affirmative consent to be tracked could satisfy these claim limitations. Doc. No. 59 at 17.

Defendant notes that the examiner agreed with the applicant that "the [prior art] reference does not appear to disclose anything specifically about receiving a signal that indicates that consent

was given to transmission of location information, as recited in the independent claims." Doc. No. 59-6 at 14, 18, 20. As recited by the disputed term, the claim requires "receive an indication that consent to transmission of location information has been given." Notwithstanding the difference between the terms "signal" and "indication," the claim language requires receiving consent to the transmission of location information, and the intrinsic evidence indicates that this consent is from the user. Thus, a user is required for this claim term.

Plaintiff's construction redrafts claims 23 of the '659 Patent from an indication "that consent *to transmission* of location information has been given" to an indication "that consent *to sending* location information has been given." Plaintiff has not provided a persuasive reason to redraft the claim as it proposes. The remaining terms in the phrase are unambiguous and should be given their plain and ordinary meaning.

Therefore, the Court construes the disputed term **"indication"** to mean **"computer data indicating that the user has performed an action on the mobile device;"** and gives the remaining terms in the phrase their plain and ordinary meaning.

### CONCLUSION

For the foregoing reasons, the Court hereby **ADOPTS** the above claim constructions for the patents-in-suit. For ease of reference, the Court's claim interpretations are set forth in a table in Appendix A.

So ORDERED and SIGNED this 14th day of February, 2018.

K. NICOLE MITCHELL
UNITED STATES MAGISTRATE JUDGE

## APPENDIX A

| Terms, Phrases, or Clauses | Court's Construction |
|---|---|
| **United States Patent No. 8,275,358** ||
| "within the telephone call" | "within the time period between the initiation of a telephone call by dialing a number and the termination of the call" |
| "communications interface" | "a wired or wireless device that connects to a mobile device" |
| "logic" | "computer hardware, firmware, software, or a combination thereof" |
| "during the telephone call" | "during the time period between the initiation of a telephone call by dialing a number and the termination of the call" |
| "a signal" | "one or more electrical or optical signals, analog or digital signals, data, one or more computer or processor instructions, messages, a bit or bit stream, or other means that can be received, transmitted or detected" |
| **United States Patent No. 9,429,659** ||
| "a signal" | "one or more electrical or optical signals, analog or digital signals, data, one or more computer or processor instructions, messages, a bit or bit stream, or other means that can be received, transmitted or detected" |
| "indication" | "computer data indicating that the user has performed an action on the mobile device" |